# UNITED STATES *v.* DIAMOND COAL & COKE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 87.   Argued November 11, 1920.—Decided March 7, 1921.

1. The Government has no equity to maintain a suit to set aside a fraudulently procured land patent, after the expiration of the statutory period of limitation, upon the ground that the fraud was concealed, (*Exploration Co.* v. *United States*, 247 U. S. 435), if it has been guilty of laches in discovering the fraud. P. 333.
2. In a suit by the Government to annul coal land patents, outstand-

ing 14 to 20 years, where the bill alleged that the entries were made by hirelings for the exclusive benefit of a coal company, operating nearby, which had taken possession of the land applied for and paid all expenses of the entries, but that the land office officials believed and relied upon the false statements of the entrymen that they were in possession and acting only for themselves; and where the bill further alleged that the entrymen deeded to the company soon after entering the land, and that the company afterwards extracted from it large quantities of coal, but that the proceedings concerning the entries were, and were intended to be, such that the fraud was concealed and that no knowledge or notice of it came to the United States until it was in part revealed by a report of a special agent made shortly before the institution of the suit, *held*, that the allegations excused the delay in bringing the suit, and that it was error to dismiss the bill by resorting to mere inferences and conjectures of notice, as by assuming that the deeds were promptly recorded (the bill not stating when), and by assuming that the company's possession was such as to give notice to the Government. P. 334.

254 Fed. Rep. 266, reversed.

THIS was an appeal from a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court for the District of Wyoming, dismissing, on defendant's motion, a bill brought by the United States to set aside numerous patents for coal land, on the ground of fraud, and for an accounting for coal extracted.

*Mr. Assistant Attorney General Nebeker*, with whom *Mr. H. L. Underwood*, Special Assistant to the Attorney General, was, on the brief, for the United States:

The rule laid down in *Wood* v. *Carpenter*, 101 U. S. 135, 140, 141, relied on by both courts below, is not applicable. A clear distinction exists between this case and those cases in which that rule has been applied, and this distinction has been recognized by this court. *Galliher* v. *Cadwell*, 145 U. S. 368, 372; *Hammond* v. *Hopkins*, 143 U. S. 224, 250. This court has never applied the rule of *Wood* v. *Carpenter* and kindred cases to a case

where gross fraud was clearly made out and where the delay in bringing suit was due to concealment. *McIntire* v. *Pryor*, 173 U. S. 38.

The sufficiency of the bill is fully sustained by the decision in *Rosenthal* v. *Walker*, 111 U. S. 185. *Bailey* v. *Glover*, 21 Wall. 342; *Traer* v. *Clews*, 115 U. S. 528, 536, 538. The doctrine of *Bailey* v. *Glover* was recently reaffirmed in *Exploration Co.* v. *United States*, 247 U. S. 435, and declared to be the true rule of federal jurisprudence in the application of statutes of limitation.

If this distinction does not exist, between cases where there was notice of the fraud, or where the fraud is not clearly established, and cases in which, as here, the fraud is clear, then the decisions in *Rosenthal* v. *Walker*, and *Traer* v. *Clews* are irreconcilable with the rule laid down in *Wood* v. *Carpenter*.

The United States, suing in vindication of its own rights, cannot be held guilty of laches.

*Mr. W. B. Rodgers,* with whom *Mr. L. O. Evans, Mr. D. M. Kelly* and *Mr. B. M. Ausherman* were on the brief, for appellee:

No facts are pleaded to show the defendant guilty of any concealment of the alleged frauds subsequent to the date of the issuance of the patents, or of any conduct which would excuse the plaintiff from sooner instituting its suit. The allegations, "and said defendant fraudulently, unlawfully and dishonestly concealed from the aforesaid officers of the United States . . . the aforesaid fraudulent practices and the true circumstances under which said entries and purchases were made," and that said frauds "were perpetrated secretly and were of such a nature as to conceal themselves," are mere conclusions.

The concealment of the frauds might be accomplished in many and various ways, and it is for the court to say

whether the conduct of the defendant constituted concealment in the legal sense, such as to excuse the Government from bringing the suit within the time limited, and likewise for the court to say whether the frauds "were of such a nature as to conceal themselves." *United States* v. *Puget Sound Traction Co.*, 215 Fed. Rep. 436; *Beatty* v. *Nickerson*, 73 Illinois, 605.

The most that can be claimed for the pleading, is that the charge is equivalent to an allegation that, after the consummation of the frauds leading to the patents, the defendant "failed to seek out the plaintiff and voluntarily confess to it, or its officers, the wrong which had been perpetrated upon it." This assertion is without warrant in any facts set out, but, even if by fair implication the bill contained such an allegation, it would be insufficient to toll the running of the statute. *Bailey* v. *Glover*, 21 Wall. 346; *Wood* v. *Carpenter*, 101 U. S. 135; *Felix* v. *Patrick*, 145 U. S. 318; *Bates* v. *Preble*, 151 U. S. 162; *Pearsall* v. *Smith*, 149 U. S. 231; *Linn & Lane Timber Co.* v. *United States*, 196 Fed. Rep. 593; *United States* v. *Exploration Co.*, 203 Fed. Rep. 387; 225 id., 854; 235 id., 110; 247 U. S. 435; *United States* v. *Norris*, 222 Fed. Rep. 16; *Keithly* v. *Mutual Life Ins. Co.*, 271 Illinois, 584.

Not passive concealment of the original fraud, but concealment brought about by a fraud superadded for the purpose, is the basis of these decisions and the latest decision by this court on the subject. *Exploration Co.* v. *United States*, 247 U. S. 435. See also *Keithly* v. *Mutual Life Ins. Co.*, 271 Illinois, 584; *Jackson* v. *Jackson*, 47 N. E. Rep. 964.

Nor does the allegation that "it was a part of said conspiracy and understood and agreed among said conspirators, said defendant and said entrymen, that said frauds and said conspiracy and the true facts surrounding said entries and purchases should at all times be concealed

from the plaintiff, etc.," aid the plaintiff.  It is distinctly alleged that this agreement was a part of the original conspiracy charged and set out in the bill of complaint. It was therefore a part of the initial fraud and merged in the cause of action which accrued upon the issuance of patents to the several entrymen.  See *United States* v. *Puget Sound Traction Co., supra,* 440.

Since the silence of the defendant, after the accrual of the cause of action and the full completion of the wrong, does not amount to fraud in law, and does not toll the running of the statute, it follows that the agreement alleged does not add to such silence any evil quality.

Altogether apart from the question whether or not the bill charges facts showing a fraudulent concealment of the cause of action, or that the frauds committed were of a self-concealing nature, when the bill shows, as in this instance, that the action was not brought within the time limited by the statute, the duty devolved upon the plaintiff to show by the allegations that it has not been wanting in diligence; and in order to do this, it is necessary to allege the time when the fraud charged was discovered, and what the discovery was, how it was made, and why it was not made sooner, in order that the court may be able to say whether, by ordinary diligence, the discovery might not have been made within the period of the statute of limitations.  *United States* v. *Puget Sound Traction Co., supra,* pp. 441, 443; *Wood* v. *Carpenter, supra,* 140; *Badger* v. *Badger,* 2 Wall. 94; *Stearns* v. *Page,* 7 How. 826.

But plaintiff says it is excused from showing diligence and for its inaction covering a period of 20 years, because the defendant failed to disclose the frauds to it.  The proposition denies the rule of diligence.

We search the bill in vain for any allegation as to when the United States first discovered the alleged frauds.  The only thing that is made clear is that this

discovery was made some time before November, 1916, for it is clear that during that month a special agent of the Department of the Interior made a report in the line of his duties to the Secretary of the Interior, disclosing the fraudulent conduct of the defendant, but when the facts reported by him were discovered neither implication nor direct averment furnish any information, and it can hardly be open to controversy that information acquired by him in the line of his duties, as an agent of the Government, or of the Secretary of the Interior, and therefore of the Government, is chargeable to the plaintiff and to the Secretary, in his official capacity, as well.

It is true that direct authority of the Secretary to appoint special agents to investigate the fraudulent acquisition of public lands, so far as the statutes of the United States are concerned, is found only in the appropriation laws, but those laws clearly vest the Secretary with this authority, and likewise clearly charge such agents with the discharge of the duties in which the special agent was engaged.

It is alleged that, at the time of the entries of the lands in question, the defendant was in possession thereof, and also of the mines therein, and has since continued in the possession, and has been engaged for many years in mining and selling the coal contained therein, and that other mines of the defendant lie in close proximity. It also clearly appears that these eighteen entries were made in quick succession, and that the several entrymen contemporaneously, or almost contemporaneously, with the respective dates of entry, executed deeds to the defendant.

There is no allegation that the defendant did not promptly record these deeds, and as the failure to record a deed is a badge of fraud, and fraud cannot be presumed against the defendant without distinct allegations relating thereto in the bill, it follows that for the purpose

of the question here under discussion the defendant must be deemed to have duly recorded said deeds at the time of the receipt of the same.

From this it not only appears that there was no concealment, but it also appears, when the legal presumption of notice of these facts is indulged in, that the United States had sufficient notice from the date of the issuance of these patents to call for action upon its part by way of investigation. *United States* v. *Norris,* 222 Fed. Rep. 16, 19; *Felix* v. *Patrick,* 145 U. S. 329, 331; *Niles* v. *Cooper,* 98 Minnesota, 39; *Hughes* v. *United States,* 4 Wall. 235, 236; *McDonald* v. *Bayard Savings Bank,* 98 N. W. Rep. 1025; *Van Gunden* v. *Virginia Coal & Iron Co.,* 52 Fed. Rep. 838, 849; *Piekenbrock & Sons* v. *Knoer,* 114 N. W. Rep. 200; *Nash* v. *Stevens,* 65 N. W. Rep. 825; *Simmons* v. *Baynard,* 30 Fed. Rep. 537; *Clark* v. *Van Loon,* 108 Iowa, 250; *Teall* v. *Slaven,* 40 Fed. Rep. 774, 780; *Burling* v. *Newlands,* 39 Pac. Rep. 49; *Scruggs* v. *Decatur Co.,* 5 So. Rep. 440; *Wood* v. *Carpenter, supra.*

When the Government seeks to avoid the bar of the statute of limitations, its rights are determined by the same rules as would be the rights of a private litigant. *United States* v. *Puget Sound Traction Co.,* 215 Fed. Rep. 441.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

This suit, begun by the United States against the Diamond Coal & Coke Company in October, 1917, had a threefold object: (1) To cancel 18 patents granted to that number of persons, at dates ranging from 14 to 20 years prior to the commencement of the suit, and covering 2,283 acres of coal land situated in the Evanston Land District, State of Wyoming; (2) to cancel deeds of conveyance to the corporation made by the entrymen who

had purchased from the United States the land which the patents embraced; (3) to recover the value of coal which it was alleged had been taken by mining operations of the corporation from the land in question during the period stated.

It suffices from the view we take of the matters requiring consideration to briefly resume the averments of the bill. It was alleged that in the year 1894 the defendant corporation had formed a conspiracy to defraud the United States of the land covered by the patents by procuring the purchase of said land from the United States by persons acting ostensibly for themselves but really as the representatives of the corporation and for its sole account and benefit. In furtherance of the conspiracy thus formed, it was alleged, 18 persons, described as entrymen, at the suggestion and in the pay of the corporation, made application at the proper land office of the United States to purchase in their own names the land covered by the patents, the land so applied for having been designated by the corporation and the entries being exclusively intended for its benefit. It was charged that these entrymen falsely swore, for the purposes of their applications to purchase, that the applications were made for their own benefit, when in fact they were solely made for the benefit of the corporation; that the entrymen, additionally, falsely swore that they were in possession of the land, had developed coal mines on it, and were engaged in working the same, when in truth the lands had never been in the possession of the applicants, who had expended no money and had done no work thereon, since the lands were, prior to and at the time of the applications, in the possession of the corporation through its officers or some persons or agents acting for it and for its benefit.

It was further alleged that, shortly after the entries were made, in furtherance of the fraudulent purpose and

upon the false allegations and affidavits above stated and before patent issued, the entrymen conveyed the land applied for by warranty deed to the corporation, although there was no allegation concerning the registry or non-registry of the deeds of conveyance thus made. The bill in addition charged that, for the purpose of securing the right which was contemplated for the benefit of the corporation, further false affidavits as to the exclusive interest of the entrymen were made and that all the money paid by way of price for the land or for expenses or otherwise was furnished by the corporation for its own account. It was alleged that the corporation for many years before the transactions thus stated had engaged in the mining, production, and sale of coal in the State and district in which the land covered by the entries was situated; that its operations had been principally carried on in the vicinity of such lands, and that the lands involved in the suit had been mined for coal and large quantities of coal had been and were still being removed therefrom, to the irreparable injury of the United States; the value of the coal thus removed being the subject-matter of the claim in that respect to which we have at the outset referred.

There were general averments that the previously alleged acts concerning the making of the entries, which were alike in all, were done, not only for the purpose of defrauding the United States and enriching the corporation, but in order to conceal the wrong which was being accomplished, and that the acts of concealment were of such a character as to deceive the officers of the United States and to lead them to believe that the entries were what they purported to be, that is, purchases by the entrymen, and to exclude, therefore, not only the knowledge that they were for the account of the corporation, but also to exclude all basis for affording any reasonable ground to put the United States upon inquiry as to the

real situation. Additionally, it was averred that, so completely did the fraud which was committed and its concealment accomplish the purposes thus intended, that the officers of the United States had no knowledge whatever of the fraudulent title acquired by the corporation and no reason to believe in its existence until a short time before the bringing of the suit when, by report of a special agent of the Land Office, knowledge of the true situation was in part conveyed, leading up to a further investigation by the Department of Justice, consequent upon which the suit was commenced.

It was moved to dismiss on four grounds: (1) That the bill stated no cause of action; (2) that it was barred by the limitation of the Act of March 3, 1891, c. 559, 26 Stat. 1093, as the six-year period fixed by that act had elapsed; (3) because the facts as to fraud and concealment alleged in the bill were not of such a character as to suspend the operation of the statute, and (4) because those facts were of such a nature as necessarily to impute the knowledge of the fraud complained of, or if not, to make it clear that the failure to seek relief within the statutory time was the result of inexcusable laches. The court, not questioning that in an adequate case the fraud and the concealment thereof would suspend the operation of the statute until the discovery of the fraud (*Exploration Co.* v. *United States,* 247 U. S. 435, 445), based its conclusion upon the qualifications and limitations inhering in that rule, as stated in the *Exploration Case* and as previously expounded in *Bailey* v. *Glover,* 21 Wall. 342. Concluding that the averments of the bill were insufficient to establish that the failure to discover within the statutory time was not solely attributable to laches, and finding the bar of the statute under these circumstances absolute, the court applied the statute and dismissed the bill. The United States having elected not to avail of leave to amend within a period of 90 days, allowed by

the court of its own motion, but to stand on its bill, a final decree was entered dismissing the bill, and the case was taken to the court below.

That court, while considering the subject in the light of the burden cast upon the United States resulting from the fact that the time fixed by the statute had run before the suit was brought, and the technical sufficiency of the bill viewed merely from that aspect, proceeded to consider the averments of the bill comprehensively. As a result, it concluded (a) that the allegations of the bill did not meet the requirements as to the exertion of due diligence to discover the fraud which they charged had been committed, and (b) that the bar of the statute was applicable because the allegations of the bill stated the existence of facts and circumstances from which knowledge of the fraud was necessarily to be imputed, or from which such inferences were plainly deducible as would have led to discovery if diligence had been exerted; in other words, that there was either knowledge of the fraud within the statutory period, or such laches resulting from failure to make inquiry as to take the case out of the equitable principle by which the positive bar of the statute could be avoided.

Before testing the accuracy of the deductions from the averred facts upon which these conclusions are necessarily based, we dispose of a legal contention of the United States, that in any event the propositions were wrongfully applied, because under the statute laches in discovering the fraud could not be imputed to the United States. As the statute in express terms deals with the rights of the United States and bars them by the limitation which it prescribes, and as that bar would be effective unless the equitable principle arising from the fraud and its discovery be applied, it must follow, since the doctrine of laches is an inherent ingredient of the equitable principle in question, that the proposition is wholly without

merit, because, on the one hand, it seeks to avoid the bar
of the statute by invoking the equitable principle sus-
pending its operation, and, on the other, rejects the
fundamental principle upon which the equitable doctrine
invoked can alone rest.

Coming, then, to consider the allegations of the bill
for the purpose of testing the conclusions based upon
them by the court below, as just stated, we are of opinion
that such conclusions cannot be sustained without draw-
ing unauthorized inferences from the facts alleged and
thus deciding the case by indulging in mere conjecture.
Without going into detail, we briefly advert to the in-
ferences from two subjects dealt with by the court below
which illustrate the necessity for the conclusion just
stated. In the first place, let it be conceded *arguendo*
that the conveyances from the entrymen to the cor-
poration, as alleged, following almost immediately the
initiation of the right to purchase and preceding the
patents, the uniformity of the method employed, and
the surrounding circumstances, would all, if known, have
constituted badges of fraud of such a character as to
produce the result which the court below based upon
them. But the result thus stated depends upon the ex-
istence of knowledge of such facts or of knowledge of
other facts from which they were reasonably deducible,—
a situation which does not here exist, as the averments
of the bill as to concealment exclude that conclusion.
True it is, that, in dealing with the question of the tech-
nical sufficiency of the pleading, the court below directed
attention to the fact that it contained no allegation that
the conveyances made by the entrymen had not been
seasonably recorded; but that in no way justifies the
inference that they had been recorded and therefore gave
notice of the fraud, even if it be conceded, for the sake
of the argument, that such recording was adequate to
give such notice,—a question which we do not now decide.

So also, let it be conceded, as held by the court below, that the allegations of the bill as to the possession of the land by the corporation at the time of the purchase by the entrymen and subsequent to their conveyances; of the propinquity of the land to the field of operations of the corporation; of its exploitation by the corporation for the purpose of taking coal therefrom, all in and of themselves, if open and public so as to be known, constituted such indications of fraud as to give notice to the United States, or at least to put it upon inquiry. But again, that concession is here irrelevant since the averments of concealment and other allegations in the bill are susceptible of the construction that the possession of the corporation was clandestine and that its operations as to the property were of the same character because not conducted in its own name but by persons interposed with the very object of concealment.

Viewing the case in the light of these considerations, as well as of others to the same effect to which we do not stop to refer, we are of opinion that error was committed in disposing of the bill upon the motion to dismiss, and that the ends of justice require that it should be only finally disposed of after hearing and proof, thus excluding the danger of wrong to result from a final determination of the cause upon mere inferences without proof.

It follows that the decree of the court below must be and it is reversed and the case remanded to the District Court with directions to set aside its decree of dismissal and to overrule the motion to dismiss and for further proceedings in conformity with this opinion.

*Reversed and remanded.*