## UNITED STATES v. SMITH.

(Circuit Court of Appeals, Ninth Circuit. July 12, 1926.)

No. 4770.

**1. Public lands ⬤⇒120.**

Act March 3, 1891, c. 561, § 8, as amended by Act March 3, 1891, c. 559, limiting suits to annul patents to six years, runs only against patent, although under section 7 of the original act (Comp. St. § 5113) right to patent evidenced by receiver's receipt for two years shall be given effect by issuance of patent.

**2. Limitation of actions ⬤⇒11(1)—United States ⬤⇒133.**

Principle that United States is not bound by statute of limitations unless self-imposed, or barred by laches of its officers in suit brought by it as sovereign government to enforce public right or assert public interest has no application where equitable persuasion is involved.

**3. Public lands ⬤⇒120—Suit by government to cancel patent held barred by laches.**

Failure of government to issue patent until 1922 on final proof in 1902, and to institute suit to cancel patent until 1924, *held* to constitute laches under statute of March 3, 1891, c. 561, precluding it from taking advantage of its own legal wrong, since action would be barred under section 8, as amended by act March 3, 1891, c. 559, if patent had issued as required by section 7 (Comp. St. § 5113).

Appeal from the District Court of the United States for the District of Oregon; Chas. E. Wolverton, Judge.

Suit by the United States against George M. Smith. From a decree dismissing the complaint, plaintiff appeals. Affirmed.

George Neuner, U. S. Atty., and J. C. Stearns, Jr., Asst. U. S. Atty., both of Portland, Or.

Omar C. Spencer and Carey & Kerr, all of Portland, Or., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

PER CURIAM. The United States brought this suit in October, 1924, to cancel a patent issued to Smith, appellee, on January 19, 1922, for a tract of public land in Oregon.

The bill alleged that Smith made entry on June 5, 1901, under the homestead law; that on August 21, 1902, he made final proof and commutation; that on September 19, 1902, the United States issued final certificate to him; that until 1909 the officers of the United States and the President had no knowledge or information of the false and fraudulent character of the testimony and representations made by Smith; that in January, 1922, by compulsion of law, patent was issued. The fraud alleged to have been perpetrated by Smith was in making false proofs of settlement, residence, cultivation, and improvement of the land.

By motion, the defendant questioned the sufficiency of the complaint on the ground that the cause of action appeared to be barred by the statute of limitations, that the plaintiff had been guilty of laches, and that the claim was stale.

In the District Court, Judge Wolverton, in a carefully considered opinion, reached the conclusion with which we are in accord. We therefore append his opinion, and, upon the reasoning thereof, affirm the decree dismissing the complaint:

"The defendant insists that the action is barred by virtue of the statute of March 3, 1891 (26 Stat. 1093), which reads: 'That suits by the United States to vacate and annul any patent heretofore issued shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents.' This is section 8 of 'An act to repeal timber culture laws and for other purposes,' as amended at the same session of Congress and on the same day. By section 7 of the original act (26 Stat. 1099; Comp. St. § 5113) it is provided: 'That after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, timber culture, desert land, or pre-emption laws, or under this act, and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him.' These two statutes were virtually enacted as one act, and are to be construed in pari materia; the object and purpose being to secure to the entryman a speedy and prompt issuance of the patent to which he is entitled, and to establish a date of repose, after which his title can be no longer questioned by the government on account of fraud or irregularity in procuring it.

"The purpose of section 7 is no longer open to controversy. It is that, where the right to a patent is evidenced by a receiver's receipt, and stands unchallenged in the land office at the end of a period of two years, it shall be given effect by the issuance of the patent, and thus 'transfer from the land officers to the regular judicial tribunals the authority to deal with any subsequent controversy over the validity of the entry, as would

be the case if the patent were issued in the absence of the statute.' Payne v. United States ex rel. Newton, 255 U. S. 438, 444, 41 S. Ct. 368, 65 L. Ed. 720. See, also, Lane v. Hoglund, 244 U. S. 174, 37 S. Ct. 558, 61 L. Ed. 1066.

[1] "But, notwithstanding these statutes and the adjudication respecting them by the Supreme Court, the statute of limitations remains that 'suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents.' The statute runs against the patent alone, and not some other document.

[2] "It is insisted that the government has been guilty of such laches in prosecuting its suit to annul the patent as to bar its right to insist upon the annulment. The receiver's receipt was issued to defendant—the entryman—September 19, 1902. The entryman was entitled to his patent September 19, 1904, and the officers of the Land Department should then have issued it. The alleged fraud of which complaint is made was discovered in 1909. The Land Department had it within its control to issue the patent at once, and thereupon to institute its suit to annul the same. This it did not do, but waited more than six years, or until January 19, 1922, before issuing the patent, and more than two years and nine months thereafter before instituting suit. The principle that the United States is not bound by any statute of limitations unless self-imposed, or barred by any laches of its officers, however gross, in a suit brought by it as a sovereign government to enforce a public right or to assert a public interest, must be conceded. United States v. Nashville, etc., R. Co., 118 U. S. 120, 125, 6 S. Ct. 1006, 30 L. Ed. 81; United States v. Beebe, 127 U. S. 338, 344, 8 S. Ct. 1083, 32 L. Ed. 121. But the principle is without application where equitable persuasion is involved, as here. United States v. Diamond Coal Co., 255 U. S. 323, 41 S. Ct. 335, 65 L. Ed. 660, is a case of strong analogy to this. There the trial court, on its finding that the averments were insufficient to establish that failure to discover within the statutory time was not solely attributable to laches, and its further finding that the bar of the statute under such circumstances was absolute applied the statute and dismissed the bill. The same statute was there invoked as here. The government protested that laches could have nothing to do with the controversy. The Supreme Court took a different view, as the following quotation from the opinion (page 333 [41 S. Ct. 335, 337]), will disclose, but reversed the case on other grounds: 'Before testing the accuracy of the deductions [of the trial court] from the averred facts upon which these conclusions are necessarily based, we dispose of a legal contention of the United States, that in any event the propositions were wrongfully applied, because under the statute laches in discovering the fraud could not be imputed to the United States. As the statute in express terms deals with the rights of the United States and bars them by the limitation which it prescribes, and as that bar would be effective unless the equitable principle arising from the fraud and its discovery be applied, it must follow, since the doctrine of laches is an inherent ingredient of the equitable principle in question, that the proposition is wholly without merit, because, on the one hand, it seeks to avoid the bar of the statute by invoking the equitable principle suspending its operation, and, on the other, rejects the fundamental principle upon which the equitable doctrine invoked can alone rest.'

[3] "The equitable principle there announced has even stronger application in the present controversy. The Land Department, which is one of the arms of the government, not only had it within its power, but it was an enjoined duty imposed upon it by law, to issue the patent long before it even discovered the fraud, and many years before it acted to issue the patent. In the meantime, if it had acted promptly, the statute would have long since run against the patent, excluding the time which elapsed before discovery of the fraud. The Land Department, or we will say the government, is not only guilty of positive and gross laches in the premises, but is seeking to take advantage of its own legal wrong, which is never permissible in equity."

Affirmed.