James F. **KILDUFF**

v.

**UNITED STATES of America.**

Civ. No. 2881.

United States District Court
E. D. Virginia,
at Richmond.

Oct. 19, 1960.

On Motion to Reconsider Sept. 26, 1961.

312

Israel Steingold, Richmond, Va., for plaintiff.

Claude V. Spratley, Jr., U. S. Atty., for the United States.

ALBERT V. BRYAN, District Judge.

Upon the motion of the United States for judgment on the pleadings upon the first count of the complaint, and upon its motion to strike a part of the second count, the Court is of opinion to sustain the first but overrule the second motion.

I. It is altogether plain that the cause of action pleaded in the first count—the failure to disclose to the plaintiff the results of his physical examinations—is a claim for an injury which arose out of or in the course of an activity incident to military service. Assuming that there was a duty upon the United States to make the disclosure to the plaintiff, the obligation came into being while the plaintiff was in the service. The examinations were a step in his entry and exit, but nevertheless an event of his service. Otherwise, the Government was not required to make the examinations, hence the medical officer in doing so was not acting within the scope of his authority, and no premise exists for the alleged liability of the United States. A report to him of the findings, the plaintiff's claim conclusively implies, was an inseparable concomitant of the examinations.

■ An injury in these circumstances is not compensable under the Federal Tort Claims Act. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Even if the examination or the defendant's nonfeasance did not occur until after discharge, when the plaintiff was actually out of the service, he was still not so long removed from it as to give him the right to sue accorded an ex-serviceman in United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954).

■ II. Again, the suit is precluded by the two-year limitation of the Act. 28 U.S.C.A. § 2401(b). The last examination, the report of which the plaintiff says should have been bared to him, was made upon his discharge from the Army in 1946. He did not sue until December, 1958.

The bar of the statute begins to run when "such claim accrues". Withholding of the information revealed by the examination is the pleaded wrong. The alleged legal injury, the other element necessary to make the wrong actionable, is the consequent, induced postponement of the procurement of medical advice. The deferment presumably ensued at once. What the non-disclosure stayed the plaintiff from doing was, he now says, exactly what he would have done on disclosure. Hence the impact of the alleged wrong was first effective at the time of his discharge in 1946. Thus the wrong and the injury were almost concurrently incipient, and a right of action thereupon arose upon the cause of action.

■ Damage from the injury, it is true, did not become manifest until much later, but in law a claim accrues from the tort—wrongful conduct plus injury—and not from the damage suffered. Richmond Redevelop. & H.A. v. Laburnum Const. Corp., 195 Va. 827, 80 S.E.2d 574, 580; Pickett v. Aglinsky, 110 F.2d 628, 630 (4 Cir. 1940). So, here, the two years started in 1946, immediately after the last examination, and barred the action in 1948, ten years before it was filed.

The nature of the tort now pleaded distinguishes this case from Urie v. Thompson, 337 U.S. 163, 169, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) and Bradt v. United States, 221 F.2d 325 (2 Cir. 1955). To

begin with, in those instances the claims were not for a tortious hiding of the plaintiff's endangering condition, but for the infliction of it. Besides, the injury was not dealt all at once as here; it was a progressive threat to the plaintiff's health, which did not culminate into an injury for some while. Just when it first became an injury was not ascertainable, and it was fair to accept the earliest manifestation of the injury as its commencement. The elapsed time would not, as here, necessarily represent the duration of the injury, but rather the duration of the possibility of ultimate injury.

■ United States v. Reid, 251 F.2d 691 (5 Cir. 1958), however, can be differentiated from the present case only upon the peculiarity of the law of Georgia in respect to the time a tort claim comes into existence. Admittedly, the law of the State of the injury governs that determination. State of Md. to Use of Burkhardt v. United States, 165 F.2d 869, 1 A.L.R.2d 213 (4 Cir. 1959); Tessier v. United States, 269 F.2d 305, 309 (1 Cir. 1959). Plaintiff's counsel advises the court that Colorado, where the plaintiff's injury was sustained, has not expressed itself on the point and no suggestion is offered that it may vary from Virginia's view.

Union Carbide & Carbon Corp. v. Stapleton, 237 F.2d 229, 69 A.L.R.2d 1206 (6 Cir. 1956) is clearly different from the case at bar. The claimant there was required as an employee to report periodically for a physical examination. He was under this obligation, and his employer was under a reciprocal duty, until the termination of his employment on February 12, 1953. He instituted his action on December 8, 1953, which was more than the statutory limitation of one year from the time of the unrevealed finding of tuberculosis. But the employer's duty to make known to the employee his condition of health remained alive until the employee resigned.

The soundness of the present conclusion quite starkly appears upon a consideration of the very constituents of the plaintiff's claim. Silence is the pith of the complaint, for the Government is not charged with causing or reactivating the tuberculosis. It is accused for not telling him he had a lung infection. True, the suppression of the report may have permitted the revival of the disease, but the suppression itself is the only ascribed invasion of the plaintiff's rights. Therefore, unless the tort was consummate immediately following his discharge, there is no predicate for this action, for then, and only then, was disclosure due him. As there was no occasion for uncovering the report later, the omission was not a repetitive or uninterrupted wrong—certainly not after the expiration of a reasonable interval after the examination.

The reason for the statutory limitation also supports the present conclusion. In the plaintiff's view the non-disclosure of the impairment of his health put a potential answerability upon the Government of unlimited duration. Its exposure to suit for any recurrence of the disease in the plaintiff would have continued sine die. Surely two years was a reasonable time for the appearance, and for warning of the plaintiff, of any injury done him through the reticence of the medical officer.

■ Even if the continued failure of the Government to uncover the report was deliberate, constituting fraud as the plaintiff avers, the concealment did not intermit the limitation's accrual. The Federal Tort Claims Act, in section 2680 (h), Title 28, U.S.C., reserves to the United States its immunity from suit for deceit. The evident purpose of the exception is to exempt the United States from responsibility for deception on the part of any of its employees, servants or agents. To toll the limitation of the Act by reason of any lack of frankness of the examining physician here, would be to open the Government to suit because of his deceit. Indeed, the prosecution of this case with concealment as a factor suggests that the gravamen of the complaint is not negligence but deceit. Of course, if the silence of the examiner amounts to misrepresentation, the claim is not remediable under the Act. 28 U.S.

C.A. § 2680(h). The very spirit and intent of these exceptive provisions of the Act are violated if the maintenance of an action is in any degree whatsoever dependent upon the assertion of fraud.

 This ruling does not overlook the established proposition that statutes of limitation, both Federal and State, are to be read with the chancery precept that they are suspended for fraud. Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). That principle has been applied where Federal enactments have been the ground of claims between private persons or in actions brought by the United States. Scarborough v. A.C.L.R.R. Co., 178 F.2d 253 (4 Cir. 1949); Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959); United States v. Diamond Coal & Coke Co., 255 U.S. 323, 41 S.Ct. 335, 65 L.Ed. 660 (1921). However, no authority has been found allowing the doctrine to prevail in suits against the United States—and certainly not to circumvent, as it would here, a positive, statutory insistence upon sovereign immunity. Cf. Osborne v. United States, 164 F.2d 767, 768 (2 Cir. 1947) and Eastern Freight Ways v. United States, 257 F.2d 703, 705 (2 Cir. 1958).

III. The motion to strike relates to that part of the second count, also under the Federal Tort Claims Act, which declares upon a warranty by the defendant of the purity of the blood transfusions administered to the plaintiff. The argument is: that a warranty is an attribute of a contract, that the United States is not vulnerable to suit in contract under the Federal Tort Claims Act, but only by virtue of the Tucker Act, 28 U.S.C. § 1346(a), that under the latter act no jurisdiction exists in the District Court on a claim beyond $10,000.00, and that as Count Two seeks a much larger amount, the claim cannot be presented in this court.

██ The point cannot well be decided on motion. The allegation of warranty may turn out to be actually one in tort, for originally breach of warranty could be laid in tort. E. I. Du Pont De Nemours & Co. v. Universal Moulded Products Corp., 191 Va. 525, 62 S.E.2d 233, 236 (1950). Until trial the real nature of the second count cannot be ascertained. Moreover, the plaintiff has asked to amend to meet the Tucker Act if his claim on the warranty is found to be in contract, and so not within the Federal Tort Claims Act. Under the amendment of September 13, 1960, P.L. 86–770, 74 Stat. 912, to 28 U.S.C. § 1406 he might also request a transfer of the action to the Court of Claims.

ON MOTION TO RECONSIDER

The plaintiff has moved the court to reconsider, and vacate, so much of its order of January 5, 1961 as granted the defendant judgment on the pleadings in respect to the first count of the complaint. Also, the plaintiff moves the court for leave to amend the complaint. On these motions the court is of the following opinions.

I. Taking the motions in inverse order the amendment of the complaint will be allowed with the understanding that no defense to the amended complaint is thereby determined, but all defenses thereto, except the statute of limitations, are reserved for future answer and disposition. It has been stipulated by the parties that the plea of the statute of limitations should be considered as now interposed to the amended complaint, as if a formal pleading of this defense had been filed, and should now be decided.

Briefly, the purpose of the amendment of the first count is to allege two additional physical examinations of the plaintiff with a tortious withholding of the results. Neither of these examinations was related to military service. One was a part of his application for a Civil Service position with the Government in February 1946, just after his discharge from the Army. The other was in November 1946 when he sought a pension or similar compensation for a Service disability. Thus, the plaintiff pitches his case on three physical examinations.

The Government presses the two-year limitation of the Federal Tort Claims Act to each of the two newly asserted causes of action based on the two later examinations. The motion to reconsider involves a review of the prior conclusions: that the originally pleaded examination was not actionable because Service-connected and, further, in any event, the statute of limitations barred an action thereon. The amendment also adds a count to the complaint, but here we deal with neither the second nor third count.

II. With reference to the physical examination incident to the plaintiff's military discharge, the court adheres to its previous views. In respect to the statute of limitations, the motion to reconsider now for the first time brings into consideration the law of Colorado in regard to the accrual of an action of this kind. The case cited is Rosane v. Senger, 112 Colo. 363, 149 P.2d 372 (1944).

It is not wholly clear whether or not the Colorado court considered concealment as indispensable to the tolling of the limitation, or simply held that the right of action does not accrue until discovery of the injury. The court stated the question before it to be: "Does justifiable delay, due to plaintiff's ignorance of the cause of a known injury, stop the running of the statute when plaintiff has used every reasonable effort to ascertain that cause and been frustrated solely by defendants' concealment?"

As if emphasizing the necessity of concealment as a factor, the opinion in referring to Miller v. Industrial Commission, 106 Colo. 364, 105 P.2d 404, noted that the general rule of limitation is not suspended when "no facts appeared upon which any recognized exception could be based", obviously meaning concealment. Concealment thus seems to have materially entered into the conclusion of the Colorado court. As it is a form of deceit or misrepresentation, it is excluded by the Federal Tort Claims Act as a predicate for an action. We think this exclusion reaches everywhere deceit or misrepresentation is a factor relied upon to maintain a suit. The motion for reconsideration of this aspect of the case must be denied.

The statute of limitations must also be sustained against the causes of action alleged upon the Civil Service and pension examinations in 1946. Admittedly, the plaintiff's tubercular condition was discovered by him in 1957 or early January 1958. Action upon the non-disclosure arising from these examinations was not begun until the present amended complaint was tendered in August or September 1961, obviously beyond the two-year limit prescribed by the Federal Tort Claims Act.

To avoid the bar of the limitation, the amended complaint would have to be treated as relating back to the date of the original complaint. This the court cannot sustain. These physical examinations and the alleged accompanying negligence constitute new grounds for recovery, quite apart and distinct from the events and negligence initially declared upon. The conduct of the examiners on the civil occasions was not in any wise related to the military examinations, the primary basis of the complaint in this action.

The motion to amend will be granted; the motion to reconsider will be denied; and the new cause of action pleaded in the amendment and based on the Civil Service and pension examinations will be dismissed as precluded by the limitation of the Federal Tort Claims Act.

## ON MOTION TO RECONSIDER AND VACATION OF ORDER

Upon consideration of the motion of the plaintiff for a reconsideration and vacation of so much of the order herein of January 5, 1961 as granted the defendant judgment on the pleadings in respect to the first count of the complaint, and on consideration of the motion of the plaintiff to amend his complaint, the court is of the opinion for the reasons set forth in its memorandum this day filed that the said motion for a reconsideration and vacation should be denied, that the motion to amend the complaint

should be allowed, but that the first count of the complaint as amended should also be dismissed; and, therefore, it is

Ordered accordingly, and this action shall stand continued for trial only on the second and third counts of the complaint.