## ANDREAE *v.* REDFIELD.

Importations were made by A. and others, whereon they paid under protest certain duties unlawfully exacted by B., collector of customs. The latter, when sued for the excess of duties, pleaded the Statute of Limitations; whereupon A. filed his bill, setting forth that his attorney was informed by an officer of the custom-house, that by the rules and practice of the Treasury Department the presentation of A.'s claim to the auditor or refund clerk would prevent the Statute of Limitations from running, and that the statute, if the claims were so presented, could not and would not be interposed as a defence in case suits should be brought to recover said excess; that B., though he disclaimed any control in the matter, declared his confidence in the knowledge and experience of the officer who made such statement, and expressed his opinion as concurring therein; that A. did present his claim to the auditor or refund clerk, as suggested; and that, relying upon the prior action of the Secretary of the Treasury in recognizing claims of a like nature, and upon said statements and opinion of the officer of the custom-house, and the concurrence of B. therein, he and others had refrained from suing until the bar of that statute had attached. He therefore prayed that B. be enjoined from pleading it in any of the actions at law for such excess. *Held*, that the matters alleged are not sufficient to estop B. from pleading the statute.

APPEAL from the Circuit Court of the United States for the Northern District of New York.

The facts are stated in the opinion of the court.

*Mr. Robert G. Ingersoll* and *Mr. A. W. Griswold* for the appellant.

*Mr. Assistant Attorney-General Smith*, contra.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Customs duties, illegally exacted, may be recovered back by an action in the Circuit Court against the collector for money had and received, provided the payment was made under protest, in writing, signed by the party, as required by the act of Congress applicable to the case. 5 Stat. 727; 13 id. 214; *The Assessors* v. *Osborn*, 9 Wall. 567.

Circuit Courts under existing laws have not jurisdiction of suits to recover back moneys illegally exacted for internal-revenue duties, unless the parties are citizens of different States, or the suit is removed into the Circuit Court from a State court. *Hornthal* v. *The Collector*, 9 id. 560.

None of the acts of Congress, however, which exclude the

jurisdiction of the circuit courts in these cases have any application where the suit is brought to recover back duties of customs illegally exacted, if the payment was made under protest, as required by law. Rev. Stat., sects. 2931–3011.

Goods to a large amount were imported by the complainants, or by the several firms to which they belong; and they allege that the goods were subject to duty in proportion to the actual market value of the articles at the principal market of the country from which the same were imported, and that the collector, in order to ascertain the dutiable value of the merchandise, erroneously added to the said market value, or compelled the owner or consignee to add to the same, certain charges for the expenses of transportation from the market where purchased, to the place of shipment, together with two and a half per cent commissions on such charges, and that he unlawfully computed the duty upon such erroneous and excessive valuation.

Importations of the kind, it is admitted, were subject to duty; but the complaint is that the duties as ascertained and liquidated were excessive, and that the complainants, in order to obtain possession of the goods, were obliged to pay the excessive amount charged; and they aver that they paid the same under protest, as provided by law.

Sixty importations of the kind were made by the complainants, and seven years after the respondent went out of office they commenced suits to recover back the excess of duty illegally exacted in each of the sixty cases.

Service was made; and the respondent, in November, 1866, appeared and pleaded, among other defences, the Statute of Limitations. Four replications were filed by the plaintiffs to the plea, to which demurrers were interposed by the defendant. Hearing was had; and the court sustained the demurrers to the third and fourth replications, and overruled the demurrers to the first and second. Issuable matters being set forth in the first and second replications, the plaintiffs filed rejoinders to those tendering issues; and in April, 1872, the issues were joined, and the cases have since been ready for trial. Continuances from term to term followed, and on the 11th of March, 1874, the present bill of complaint was filed by the plaintiffs in those several actions, all joining as complainants. All of the

actions at law are still pending, and the only relief sought by the bill of complaint is an injunction to restrain the respondent " from prosecuting or maintaining upon the trial of any of the said sixty actions his plea of the Statute of Limitations, and from claiming and insisting in said trials " that the said actions or any of them are barred by the said Statute of Limitations.

Two objections are taken to the action of the collector : 1. That in ascertaining the dutiable value of the goods he improperly included the expense of transportation·from the principal market of the country where purchased, to the place of shipment ; 2. That he also erroneously included in such dutiable value a higher rate of commissions than is authorized by the revenue law.

Various matters are set forth in the bill of complaint as causes that entitle the complainants to the relief sought, which, in brief, may be described as follows : 1. That the complainants respectively have a just and legal claim to recover back the excess of duties which they paid under protest, and which were illegally exacted by the respondent.   2. That the Statute of Limitations at the time hereafter mentioned was about to take effect as a bar to the causes of action embraced in the said several suits.   3. That an officer in the custom-house where the goods were entered stated to the attorney of the importers that, by the rules and practice of the Treasury Department, the presentation of their respective claims to the auditor or to the refund clerk of the custom-house would prevent the running of the Statute of Limitations, and that the statute, if the claims were so presented, could not and would not be interposed as a defence, in case suits should subsequently be commenced to recover back such excess of duties.   4. That the respondent, as such collector, though he disclaimed any control in the matter, declared his confidence in the knowledge and experience of the officer who made that statement, and expressed to the said attorney his concurrence in the said opinion and statement. 5. That the complainants did present their respective claims to the auditor or refund clerk of the custom-house, as suggested, and that relying upon the prior action of the Secretary of the Treasury in recognizing claims of a like nature, and upon the said statements and opinion of the officer of the custom-house,

and the concurrence of the respondent therein, they respectively refrained from bringing actions to recover back such excess of duties so illegally exacted until the Statute of Limitations had run against all of their claims.

Preliminary to those allegations in the bill of complaint, it is also alleged that actions of a like kind to recover back such illegal exactions were previously commenced and prosecuted in two other districts, in which it was decided and adjudged that the charges for transportation and commissions on the same were illegal, and that the Secretary of the Treasury paid back the excess in those cases; and they also allege that orders were issued by that officer to the respondent and to his successor in office to prepare statements showing the amount of such excess, and to transmit the same to the department for consideration.

Due appearance was entered by the respondent, and he demurred to the bill of complaint. Certain interlocutory proceedings followed, which it is not important to notice in this investigation. Suffice it to say, in this connection, that the parties having been fully heard, the court entered a decree dismissing the bill of complaint, and the complainants appealed to this court. Since the appeal was entered here, the complainants assign for error the ruling of the circuit judge sustaining the demurrers of the respondent, and the decree of the court dismissing the bill of complaint.

Discussion to show that the several importers had a good cause of action, irrespective of the Statute of Limitations, is unnecessary, as that proposition is admitted by the demurrer; but it is equally clear that that admission, without more, will not avail the complainants in the present controversy, as it is obvious that they had a plain, adequate, and complete remedy at law.

Excessive customs duties illegally exacted may be recovered back in an action of assumpsit for money had and received, if due protest in writing is made by the party aggrieved, at or before the payment of the duties, setting forth distinctly and specifically the grounds of objection to the required payment. 5 Stat. 727.

Suppose that is so, still it is insisted by the complainants that they were wrongfully induced by the public authorities

to delay the enforcement of their legal claims until their respective causes of action became barred by the Statute of Limitations; and attempt is made in argument to support that proposition by each and every of the grounds specifically set forth in the bill of complaint.

1. That the circuit courts in two instances decided and adjudged that the exaction of such duties was illegal, and that the Secretary of the Treasury repaid the same in accordance with the judgments.

2. That the Secretary of the Treasury submitted to the rule established in those cases, and was willing to apply it to the claims of the importers in these cases, when the claims were duly adjusted and presented in the manner required by the regulations of the department.

3. That the Secretary of the Treasury issued an order to the collector to ascertain the amount of such excess of duty, and to transmit the account when prepared to the department, together with a statement of the excess charged for commissions on the same importations.

4. Orders, it is also alleged, were adopted by the Treasury Department which show that the importers in such cases were entitled to the excess of duties illegally exacted as soon as the importers could furnish to the auditor or refund clerk detailed statements of the previous importations, and the names of the vessels in which they were made, and the dates of their arrival in the port, such statements being required in order to enable the auditor of the custom-house or refund clerk to prepare certified copies of the same to be forwarded to the department, pursuant to the instructions of the Secretary of the Treasury.

Labor, care, and attention were required to comply with that requirement; and the complainants allege that whatever devolved upon them in the matter was seasonably accomplished, but they admit that the certified statements to be forwarded to the department were not completed by the auditor or refund clerk when the respondent, as collector, went out of office.

Culpable remissness of duty is not charged upon the auditor or refund clerk, during the period while the collector who liquidated the duties remained in office as collector of the port. Nothing of the kind is alleged, but the charge is that

his successor refused to allow the process of adjusting the claims of the complainants to be continued; that they complained of the delay and the refusal of the successor, and that the Secretary of the Treasury issued an order to the new collector, requesting that the instructions upon the subject given to his predecessor should be complied with at his earliest convenience; and it is alleged that such an order was given, as shown by the exhibit annexed to the bill of complaint, but it is admitted that the claims of the complainants were never reported in pursuance of the orders of the Secretary of the Treasury.

Considerable progress was made in preparing the necessary statements; and the complainants allege that it was during that period that their attorney suggested to the auditor of the custom-house that the claims would soon be barred by the Statute of Limitations, and made inquiry of him whether it would not be necessary to commence suits to prevent the bar from attaching, — to which the auditor replied, that instructions having been given by the department to refund the money, it was not the fault of the department that it had not been done; that all the complainants had to do to prevent the Statute of Limitations from running was to present their claims to the refund clerk for adjustment, as required by the rules and practice of the Treasury Department.

Subsequent conversations were also had by their attorney with the auditor of the custom-house, of like import and to the same effect; and the complainants also allege that the respondent, in a conversation with their attorney, remarked that the auditor was very familiar with the practice of the department, and that he, the attorney, could rely upon the auditor's statements, and added, that he could see no necessity for commencing suits in the cases, as if the complainants would present their claims for adjustment the statute would cease to run from that time, and would not be interposed as a defence to the claims.

Many other excusatory allegations of a corresponding import are set forth in the bill of complaint; and the complainants allege that, relying upon those matters, and for the purpose of avoiding a multiplicity of suits, they refrained from bringing

the actions, in full faith and confidence that the Statute of Limitations would not be set up as a defence to any actions which should thereafter be brought to enforce their claims.

Afterwards the same attorney, as the complainants allege, sought an interview with the Secretary of the Treasury, and brought to his notice the representations of the auditor of the custom-house and the respondent in respect to the Statute of Limitations, and inquired of him whether the complainants could rely upon the representations and statements that suits need not be commenced to prevent the Statute of Limitations from running, provided they presented their claims for adjustment in proper time. Before replying to the inquiry, the allegation is that the Secretary of the Treasury consulted with the clerk in charge, and the complainants allege that his reply was that such had been the practice for many years, and that latterly it had become even more liberal, referring to the fact that where a favorable decision was obtained in one case the same rule was applied in others of the same class.

Claims of the kind in great numbers were in the mean time, as the complainants allege, adjusted and paid to the claimants, and they also allege that on the 10th of May, 1864, sixty of their claims remained unadjusted and unpaid, for which they brought the several suits described in the bill of complaint. Process being issued and served, the respondent appeared and pleaded *non assumpsit*, payment, and the Statute of Limitations. Replications, as before explained, were filed, and demurrers interposed and disposed of in the manner heretofore stated, leaving issues for the jury under the first two of the replications.

Viewed in the light of these several suggestions, it is clear that the several claims of the complainants were never prepared and presented, as required, to the Secretary of the Treasury for adjustment and allowance; but the complainants allege that they were induced to delay such preparation and presentation by the recited official representations and others of like import, and they pray for an injunction restraining the respondent from setting up the bar of the Statute of Limitations in defence of the several actions to recover back the moneys which the respondent, as collector, illegally exacted of them as such importers.

Importers in such cases may make payment under protest, and bring an action of assumpsit for money had and received against the collector to recover back whatever amount was illegally exacted. Preventive remedies are not authorized by the acts of Congress, nor have they ever been since the revenue system of the United States was organized. Instead of that, the act of Congress now in force provides as follows : " And no suit for the purpose of restraining the assessment and collection of a tax shall be maintained in any court." 14 Stat. 475.

Appropriate remedy is given in such cases by action against the collector, and provision is made in case the importer recovers, that no execution shall issue against the collector if the court certifies that he had probable cause for his action, or in case it appears that he acted under directions of the Secretary of the Treasury, or other proper officer of the government, the regulation being that the amount recovered shall in that event be paid out of appropriations made for the purpose. 12 id. 741 ; Rev. Stat., sect. 989.

Merchants importing goods find ample remedy under the provisions mentioned for illegal exactions made by collectors, and the better opinion is that it is the only judicial remedy authorized by Congress for the redress of such grievances. Beyond all doubt, the remedy the importing merchant has in such a controversy is against the collector ; and in case of recovery he is entitled to an execution against the defendant in the action, unless the court shall certify that the collector had probable cause for his action, or it appears that he acted under directions from the proper official source. Directions of the kind are doubtless frequently given ; and in such cases it may well be contended that the suit is in the nature of a suit against the United States, as the provision is that " the amount so recovered shall, upon final judgment, be provided for and paid out of the proper appropriations from the treasury." 12 Stat. 741.

Cases of that kind present little or no difficulty of decision ; but it is equally true that cases arise where no such instructions were given, and in such cases it follows that the importer, if he prevails in the suit, is entitled to an execution against the defendant which will bind his goods and estate, unless the court

where the judgment is rendered deems it proper to give the collector a certificate that he had probable cause for his action in exacting the excessive duties. Certificates of the kind are never given until the litigation is closed, and, of course, it cannot be known whether it will be given or refused pending the litigation.

Where the collector acts under antecedent directions from the proper source, it is clear that the suit is in the nature of a suit against the United States, and it may be that the suit, if the certificate of probable cause is finally given, may be regarded in the same light; but more difficulty would attend the solution of the question in a case where neither of those conditions occur, especially if it appears that the suit was not commenced until after the collector went out of office. Actions of the kind must be commenced against the collector who made the illegal exaction, and no one pretends that such an action can proceed against the successor after the incumbent goes out of office.

Importers, in case they prevail, are in any view entitled to be paid the amount which they recover; nor is it important in this case to determine whether the pending actions are in the nature of suits against the United States, or merely suits against the collector, as in either view the result must be the same. Argument to show that the actions in form are actions against the present respondent is unnecessary, as that is conceded, but there is much reason to suppose that the collector acted under official orders.

Concede that the United States is the real party, still the court is of the opinion that there is nothing in the remarks attributed to the auditor of the custom-house or to the refund clerk or to the Secretary of the Treasury which can be held to preclude the respondent from pleading any proper plea to the actions which he may think necessary in making his defence. When the suits against the collector were commenced to recover back the money which the complainants allege he exacted from them illegally, he was a private citizen, and nothing is shown in pleading to justify the conclusion that the Secretary of the Treasury or the customs officers made any remarks which can create any liability as against the respondent which he did not

incur. Nor is there any thing in the remarks of that officer, made to the attorney of the complainants, which will support the theory that he ever intended to deprive the respondent, as the defendant in these actions, of the right to plead any plea he, the respondent, might see fit in defence of the claims therein prosecuted.

Congress undoubtedly might authorize actions of the kind to be brought directly against the United States; but all must concede that such a power has never been exercised and is not conferred, and in the absence of such legislation the court is of the opinion that such actions may in certain aspects be treated as actions against the collector, unless it appears that he acted under the directions of the proper official authority, or that a case is made where no execution can issue against the collector.

Even suppose it were otherwise, still it is clear that none of the remarks attributed to the Secretary of the Treasury or to the officers of the customs can have any effect to estop the respondent from pleading any matter in defence of the actions which he may think necessary to protect his rights. Rightly interpreted, all that the respondent said to the attorney of the complainants had reference to the future action of the Secretary of the Treasury; that is, he expressed the opinion that the complainants could rely upon the statements of the auditor as correct, that according to the practice of the department the Statute of Limitations would cease to run when their claims were properly prepared and presented for adjudication and allowance.

Taken in the most favorable view for the complainants, it is clear that it is impossible to regard those remarks as a contract or promise made by either party. There was no promise to forbear instituting the suits, nor was there any promise, if forbearance was accorded, that the statute should cease to run. Every pretence of that sort is negatived by the language employed, which even fails to show that any negotiation took place between the parties looking to any such arrangement, contract, or promise. When they separated, each party was as free to pursue his own course as when the interview commenced. Complainants might have brought suits the same day; and if

they had, the respondent would have been at liberty to make any defence in his power, irrespective of any thing which had transpired at the interview.

Nor is there any thing shown in the remarks attributed to the Secretary of the Treasury which can be held to support the theory of the complainants that he entered into any contract with their attorney, or ever made any promise that the Statute of Limitations should cease to run. All he did was to answer the questions propounded as to the practice of the department; but he gave no assurance that any indulgence would be granted to the complainants, unless the claims were duly prepared and presented for adjustment in proper time.

Examined in the light of these suggestions, as the case should be, it is obvious that the complainants have no just cause of complaint, as they have not in fact been deceived or misled.

Grant that, and still the complainants contend that it had the effect to conceal from them the necessity of instituting suits to prevent their claims from being barred by the lapse of time, and they contend that the same rule should be applied in the case as when the defendant fraudulently conceals from the plaintiff his cause of action; and decided cases are referred to where it is held that in such controversies the statute does not begin to run until the fraud is discovered.

Except where the Constitution, treaties, or statutes of the United States otherwise require, the Judiciary Act provides that the laws of the several States shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply. 1 Stat. 92; Rev. Stat., sect. 721.

Repeated decisions of this court decide that the court is bound to conform to the decisions of the State courts in the construction of their Statutes of Limitation. *Green* v. *Neal's Lessee*, 6 Pet. 291; *Harpending* v. *Dutch Church*, 16 id. 455; *Porterfield* v. *Clark*, 2 How. 125.

State statutes in many cases provide that, where the action proceeds upon the ground of fraud, the lapse of time is to be computed from its discovery; but the courts of New York, as well as several other States, have always held that the concealment of the cause of action *ex contractu* does not interrupt

or delay the running of the statute as a bar to the action. *Troup* v. *The Executors of Smith*, 20 Johns. (N. Y.) 44.

Assumpsit was brought in that case to recover damages, for that the testator, in his lifetime, undertook to survey a certain township of land, and to divide the same into convenient lots, to enable the plaintiff to sell the same to the best advantage; and the charge was, that he performed the work so unfaithfully and unskilfully, that it caused great damage to his employer, to which was added the money counts. Due appearance was entered by the executors of the deceased, and they pleaded *non assumpsit* and the Statute of Limitations. Issue was joined upon the first plea, and to the second the plaintiff replied that the cause of action was not discovered until within less than six years before the action was commenced. More than six years had elapsed after the fraud was committed, but it was not discovered until two or more years later; and the defendant demurred to the replication, insisting that the statute commenced to run from the time the fraud was committed, and the question of the sufficiency of the replication was argued by eminent counsel.

Plaintiff's counsel, in endeavoring to support the replication, contended that the cause of action did not accrue until the plaintiff discovered the fraud in making the survey; and in responding to that proposition, Spencer, C. J., who delivered the opinion of the court, remarked that the inquiry is, when did the plaintiff's cause of action accrue? and he immediately answered the inquiry as follows: "Most certainly, when the fraud was consummated;" which was, as the whole court held, when the testator had completed the survey, as far as it was completed, and made the return of his field-notes and received his compensation, adding, that the injury, as far as he was concerned, was then done, and that he then became liable to an action for the fraudulent and imperfect manner of executing the duties he had assumed.

Speaking to the same point, the learned Chief Justice also remarked, that the fact that the plaintiff did not discover the imposition practised is a matter entirely distinct from the existence of the fraud and imposition. If, then, the plaintiff's cause of action accrued from the consummation of the fraud

by the testator, and not at the time the plaintiff discovered it, the statute interposes as a protection, unless the action is commenced within six years next after the wrong was perpetrated.

Some countenance, he admits, is given to the opposite theory by certain decided cases, to which he refers, and then he proceeds to say : " We cannot, however, yield the convictions of our own minds to decisions evidently borrowed from the courts of equity, and which have never been sanctioned by the courts of law in the country from which our jurisprudence is derived." He admits that the rule is otherwise in courts of equity; but the court decided that courts of law are expressly bound by the statute, giving as a reason for the conclusion, that it relates to specified actions, and that it declares that such actions shall be commenced and sued within six years next after such actions accrued, and not after.   Maxwell, Statutes, 6; *The Imperial Gas Light and Coke Co.* v. *The London Gas Light Co.*, 10 Exch. 39.   Thus not only affirmatively declaring within what time these actions are to be brought, but inhibiting their being brought after that period.

It is no answer to a plea of the Statute of Limitations, says Nelson, C. J., that the cause of action was fraudulently concealed by the defendant until after the statute had attached, and that the suit was brought within the time limited by the statute after the discovery of the right to sue.   *Allen* v. *Mille*, 17 Wend. (N. Y.) 204; *Leonard* v. *Pitney*, 5 id. 30.

Courts of equity, says Bronson, may grant relief against acts and contracts executed under mistake or in ignorance of material facts; but it is otherwise where a party wishes to avoid his act or deed on the ground that he was ignorant of the law. *Ignorantia juris non excusat.   Champlin* v. *Laytin*, 18 id. 407 ; *Storrs* v. *Barker*, 6 Johns. (N. Y.) Ch. 166.

It is not a sufficient answer to the Statute of Limitations, says Phelps, in an action on the case for deceit, that the plaintiff was ignorant of his cause of action until within six years, although that ignorance was occasioned by the nature of the deceit or the manner in which the fraud was perpetrated. *Smith* v. *Bishop*, 9 Vt. 110 ; *Fee* v. *Fee*, 10 Ohio, 469; *Clark* v. *Reeder*, 1 Spears (S. C.), 407.

Without more, it must be conceded that these authorities are sufficient to show what the established rule in the States mentioned is, where the suit is an action at law, and that the fraudulent concealment by the defendant of the plaintiff's cause of action is not a good answer to the plea of the Statute of Limitations. Other States adopt the opposite rule, and their courts hold that the rule at law is the same as in equity. *Hovender* v. *Annesly*, 2 Sch. & Lef. 607 ; *Coster* v. *Murray*, 5 Johns. (N. Y.) Ch. 522 ; *Michoud* v. *Girod*, 4 How. 503 ; *Hallet* v. *Collins*, 10 id. 187 ; *Sherwood* v. *Sutton*, 5 Mas. 149 ; *Jones* v. *Conway*, 4 Yeates (Pa.), 109 ; *McDowell* v. *Young*, 12 Serg. & R. (Pa.) 128 ; Angell, Limitations (6th ed.), sects. 189, 190.

But it is not necessary to rest the case entirely upon the State rule of decision, as it is clear that the matters alleged in the bill of complaint are not sufficient to support any such theory, nor is that the true theory of the claim made by the complainants. On the contrary, they allege that they had a legal and just claim to recover back certain import duties illegally exacted by the respondent ; and the necessary implication from the allegation is that they knew the legality of the claims as well when they filed their protests as when, seven years later, they instituted the pending actions against the respondent.

Fraudulent concealment of the cause of action is not alleged, nor is it the *gravamen* of the complaint. No such charge is made ; but the complaint is that they were induced by the aforesaid representation to refrain from bringing their actions until the bar of the Statute of Limitations had attached, which, in the judgment of the court, the matters set forth in the bill of complaint are not sufficient to show.

Give the allegations the broadest signification the language employed will justify, and it is clear that the conversations attributed to the Secretary of the Treasury and the officers of the custom-house do not amount to a contract or promise that the Statute of Limitations should cease to run in any contingency, whether the complainants did or did not cause their claims to be prepared and presented to the Treasury Department for adjustment and allowance.

They never did prepare and present their claims to the Secretary of the Treasury for allowance, as required by the alleged

rules of the department, nor do the conversations alleged amount to a promise that the statute should cease to run even if they had complied with the supposed rules and practice of the department.

Conversations of the kind cannot benefit the complainants, for several reasons: 1. Because they do not amount to a promise that the Statute of Limitations should cease to run; and if they did, they cannot avail the complainants as a new promise, because they are not in writing. 2. They do not amount to a contract to that effect; and if they do, they are without consideration. 3. They cannot have the effect to estop the respondent from pleading the bar of the statute, because both parties were equally well informed of all the facts. *Shapley* v. *Abbott*, 42 N. Y. 443; *Packard* v. *Sears*, 6 Ad. & Ell. 474; *Freeman* v. *Clark*, 2 Exch. 654; *Foster* v. *Dawber*, 6 id. 834; *Edwards* v. *Chapman*, 1 Mee. & W. 231; *Swain* v. *Seamens*, 9 Wall. 274; s. c. 12 Blatch. 419.

Tested by these considerations, it follows that there is no error in the record.                            *Decree affirmed.*

MR. JUSTICE MILLER, with whom concurred MR. JUSTICE FIELD, dissenting.

I dissent from the judgment in this case, because I believe that the acts and promises of the officers of the government, alleged in the bill, are such as to work an estoppel in equity to the plea of the Statute of Limitations in this case; and that the facts establishing this estoppel are too complex, and their relation to the defendant such that the issue cannot be well tried on a replication to the plea.