**MOVIECOLOR LIMITED, Plaintiff-Appellant,**

v.

**EASTMAN KODAK COMPANY, Technicolor, Inc. and Technicolor Motion Picture Corporation, Defendants-Appellees.**

No. 193, Docket 26470.

United States Court of Appeals Second Circuit.

Argued Jan. 19, 1961.

Decided March 10, 1961.

See also 24 F.R.D. 325.

82

Eugene N. Sosnoff of Cooper, Ostrin & De Varco, New York City. (Herman E. Cooper, Eugene N. Sosnoff, and Ronald J. Brooks, New York City, on the brief), for plaintiff-appellant.

Roy W. McDonald, New York City (Donovan, Leisure, Newton & Irvine, New York City, Nixon, Hargrave, Devans & Dey, Rochester, N. Y., Roy W. McDonald, New York City, Arthur L. Stern, Rochester, N. Y., and Theodore S. Hope, New York City, on the brief), for defendant Eastman Kodak Co.

George S. Flint, Fulton, Walter & Duncombe, New York City, for defendants-appellees Technicolor, Inc. and Technicolor Motion Picture Corp.

Before MEDINA, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

Plaintiff brought this action under § 4 of the Clayton Act, 15 U.S.C.A. § 15, in the Southern District of New York in 1959. It sought to recover treble damages for injuries from alleged violations of the antitrust laws by defendants in suppressing competition in the manufacture and sale of color still and motion pictures. Later we shall have to analyze the complaint in some detail; for the present it is enough that the complaint charged defendants with a series of illegal acts culminating in an agreement, dated October 22, 1931, by which plaintiff consented to the cancellation of a license from Société du Film en Couleurs Keller-Dorian (hereafter French Keller-Dorian) giving plaintiff the exclusive right to exploit the Keller-Dorian color process subject to certain rights of defendant Eastman Kodak Company and others under earlier agreements.

Since § 4 of the Clayton Act contained no period of limitations in 1931, as it now does by virtue of the Act of July 7, 1955, c. 283, § 1, 69 Stat. 282, 283, 15 U.S.C.A. § 15b, reference must be made to New York law to determine the applicable period, here the six years provided by New York Civil Practice Act, § 48, subd. 2, for an "action to recover upon a liability created by statute, except a penalty or forfeiture," Bertha Building Corp. v. National Theatres Corp., 2 Cir., 1959, 269 F.2d 785, 789, certiorari denied 1960, 361 U.S. 960, 80 S.Ct. 585, 4 L.Ed.2d 542. Plaintiff sought to avoid the time bar raised by defendant's motion for judgment on the pleadings, F.R.Civ.Proc. 12(c), 28 U.S.C.A., by invoking what it contended to be an applicable federal rule that a defendant guilty of certain types of conduct which, for present purposes, we will describe as concealment of the wrong, will not be allowed to claim that a period of limitations has begun to run while the concealment continues. To this appellees countered, and the District Judge held, contrary to Winkler-Koch Engineering Co. v. Universal Oil Products Co., D.C. S.D.N.Y.1951, 100 F.Supp. 15, that the federal concealment rule applies only when either Congress has specified its own period of limitation in creating a right as in Bailey v. Glover, 1875, 21 Wall. 342, 22 L.Ed. 636, or the action is to enforce a federally created right and is "in equity" as in Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, and that hence the instant case is governed by the law of New York, which has no similar doctrine with respect to concealment save as specifically provided in § 48, subd. 5 of the New York Civil Practice Act for actions "to procure a judgment on the ground of fraud," see Austrian v. Williams, 2 Cir., 1952, 198 F.2d 697, 700, citing Pollack v. Warner Bros. Pictures, Inc., 1st Dept. 1943, 266 App.Div. 118, 120, 41 N.Y.S. 2d 225, 226 and other cases; Varga v.

Credit-Suisse, 1st Dept. 1958, 5 A.D.2d 289, 292, 171 N.Y.S.2d 674, 677, affirmed 1958, 5 N.Y.2d 865, 182 N.Y.S.2d 17. We hold that the federal rule as to the effect of concealment on the running of a period of limitation applies to an action for treble damages under the Clayton Act even when a state statute is used to measure the period; but we affirm on the ground that the complaint does not contain allegations sufficient to bring plaintiff within this federal rule. Although we could dispose of this appeal solely on the latter ground, we think it proper to deal also with the important question of law decided by the District Court, since the issue has been fully argued, the decisions in the Southern District are in conflict, and the problem is likely to recur.

### I.

Bailey v. Glover, supra, held that in an action to enforce a federally created right to recover for fraud, a federally established period of limitation does not begin to run until the fraud is discovered, whether the action was in equity, as it there was, or at law. Although that principle might have been limited to cases where the action itself sounded in fraud, it has not so been confined; Holmberg v. Armbrecht, supra, applied it to an action to collect a statutory liability imposed on stockholders of joint stock land banks, 12 U.S.C.A. § 812, where the only "fraud" was concealment of the shareholders' identity, stating at page 397 of 327 U.S., at page 585 of 66 S.Ct., "This equitable doctrine is read into every federal statute of limitation."

It has also been long established that when Congress created a federal right but did not prescribe a period for its enforcement, Federal courts will borrow the period of limitation prescribed by the state where the court sits, McCluny v. Silliman, 1830, 3 Pet. 270, 7 L.Ed. 676; Campbell v. City of Haverhill, 1895, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280; O'Sullivan v Felix, 1914, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980. The basis of this was that Congress could not have intended an unlimited period

for enforcement as would otherwise exist in actions at law, and that, selection of a period of years not being the kind of thing judges do, federal judges should borrow the limitation statutes of the states where they sit. Similarly, federal courts followed state statutes determining whether absence or disability should suspend the running of a statute of limitations and, if so, for how long, and the state courts' interpretations of such statutes, not only in diversity actions, Bauserman v. Blunt, 1893, 147 U.S. 647, 13 S.Ct. 466, 37 L.Ed. 316, as Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, later required, but also in actions to enforce a federally created claim, Barney v. Oelrichs, 1891, 138 U.S. 529, 11 S.Ct. 414, 34 L.Ed. 1037. In dealing with federally created claims both federal and state law must sometimes be consulted to determine whether the borrowed period has run. Thus, when a state has established different periods of limitation for different types of action, a federal court enforcing a federally created claim looks first to federal law to determine the nature of the claim and then to state court interpretations of the statutory catalogue to see where the claim fits into the state scheme. McClaine v. Rankin, 1905, 197 U.S. 154, 25 S.Ct. 410, 49 L. Ed. 702; Bertha Building Corp. v. National Theatres Corp., supra, 269 F.2d at pages 788–789. See Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U.S. 390, 27 S.Ct. 65, 51 L. Ed. 241. Similarly, a federal court will follow state decisions as to how far a cause of action must be "complete" to have "accrued" under state limitation statutes but will look to federal law to determine what needs be done to advance a federally created right to the level so required, Rawlings v. Ray, 1941, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605; Cope v. Anderson, 1947, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602; it will look also to state decisions to determine where the cause of action accrued, Cope v. Anderson, supra. State statutes and decisions of the sort described have been thus bor-

rowed not only in actions at law but also in many types of suits in equity to enforce federally created claims, to such extent as the state law was applied in equity by the state courts, see Russell v. Todd, 1940, 309 U.S. 280, 290–294, 60 S.Ct. 527, 84 L.Ed. 754.

In sharp contrast to all this, Holmberg v. Armbrecht, supra, refused to apply the New York doctrine that concealment would not suspend the running of the statute in an action not founded on fraud, where the suit in the federal court was to enforce a federal right and was "in equity" although, unlike Bailey v. Glover, there was no federally established period of limitation. The question before us is whether the principle of Holmberg v. Armbrecht applies also in an action "at law" to enforce a federal right. Neither the parties' research, nor our own, has disclosed any decision truly determinative of that issue either by the Supreme Court or by a Court of Appeals, decisions of the latter applying a doctrine of concealment so as to extend state statutory periods in actions "at law" to enforce federally created rights without federal limitation apparently being consistent with the law of the state where the court sat, American Tobacco Co. v. People's Tobacco Co., 5 Cir., 1913, 204 F. 58; Burnham Chemical Co. v. Borax Consolidated, Ltd., 9 Cir., 1948, 170 F.2d 569, certiorari denied 1949, 336 U.S. 924, 69 S.Ct. 655, 93 L.Ed. 1086, rehearing denied 1949, 336 U.S. 955, 69 S.Ct. 878, 93 L.Ed. 1109; Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd., 9 Cir., 1950, 185 F.2d 196, certiorari denied 1951, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680, rehearing denied 1951, 341 U.S. 912, 71 S.Ct. 620, 95 L.Ed. 1349; Crummer Co. v. DuPont, 5 Cir., 1955. 223 F.2d 238; 5 Cir., 1958, 255 F.2d 425; Tobacco and Allied Stocks, Inc. v Transamerica Corp., D.C.D.Del.1956, 143 F.Supp. 323, affirmed 3 Cir., 1957, 244 F.2d 902.

In the last analysis, decision of that issue requires an attempt to divine a purpose of Congress on a subject where no purpose has been manifested, if, indeed, it was had. Plainly Congress did not deem complete nation-wide uniformity of limitation essential in such cases, else it would have provided its own period, as for the subject with which we are here concerned, it now has done, 15 U.S.C.A. § 15b. But we still must endeavor to determine whether, on the narrower issue of the effect of the wrongdoer's concealment, Congress would have preferred uniformity among the federal courts with respect to the right it had created, a uniformity favorable to recoveries by plaintiffs, or uniformity as between the treatment of this right in federal courts and of rights of a related conceptual character in the courts of the state where the federal court sits.

■ We think the former, at least where, as here, the right not merely is federally created but is enforceable only in the federal courts. To speak of "uniformity" as between federal and state courts in such a case is somewhat of a misnomer, and it is hard to see what policy would be served by attempting to achieve it. It seems far more likely that Congress would have desired the federal suitor it was creating to have the benefit of the federal rule prolonging the period of suit during concealment by the wrongdoer. This is particularly so when, as under the Clayton Act, enforcement of the right often serves not merely private but public ends.[1] In this area, as contrasted with diversity litigation, federal interests transcend those of the states; state limitation statutes and doctrines are utilized to effect federal, not state, policy; and there is no reason for bor-

---

1. The debates on the 1955 amendment of the Clayton Act to provide its own period of limitation for treble damage actions, 69 Stat. 283, include statements by Representative Celler, chairman of the House Judiciary Committee, in answer to a question by Representative Patman, that under existing law the period of limitation ran only from discovery and that the new statute would not change that. 101 Cong.Rec. 5129, 5130, 5133 (1955).

rowing a state doctrine when there is an established federal one. See 2 Moore, Federal Practice (2d ed.), p. 763.

Holmberg v. Armbrecht, supra, especially when read in the light of Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, appears to go a considerable way toward this answer, despite certain language that might be read as confining the decision more narrowly. The Guaranty Trust Co. case decided that state rules of limitations, including the lack of effect of concealment, see 2 Cir., 1944, 143 F.2d 503, 521, apply in a federal suit to enforce a state created right to the same extent as in the courts of the state, "whether the remedies be sought at law or may be had in equity," 326 U.S. at page 112, 65 S.Ct. at page 1471. Since that is so, not merely the decisive but a sufficient reason for the contrary result in Holmberg v. Armbrecht must have been, not that the suit was in equity, although it was natural that the Court should have stressed this, but that the right was federally created. In at least two places the opinion indicates this rather strongly. Thus, Mr. Justice Frankfurter said, 327 U.S. at page 395, 66 S.Ct at page 584, 90 L.Ed. 743:

> "The implied absorption of State statutes of limitation within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles. See Board of Com'rs of County of Jackson, Kansas v. United States, 308 U.S. 343, 349–350, 351–352, 60 S.Ct. 285, [287, 288, 289] 84 L.Ed. 313."

This seems quite as applicable to what would have been an action at law as to a suit in equity; indeed, the sentence follows immediately upon a reference to borrowing in "action at law." And, 327 U.S. at page 397, 66 S.Ct. at page 585, after stating that Bailey v. Glover, supra, "is read into every federal statute of limitation," the opinion goes on:

> "It would be too incongruous to confine a federal right within the bare terms of a State statute of limitation unrelieved by the settled federal equitable doctrine as to fraud, when even a federal statute in the same terms would be given the mitigating construction required by that doctrine."

Since Bailey v. Glover, supra, applied "at law" as well as "in equity," the incongruity would seem as great in one case as in the other.

Moreover, to insist on any such distinction as appellees urge would be a refusal adequately to recognize the merger of federal law and equity effected by F. R.Civ.Proc. 1 [2] and the 1948 revision of § 34 of the Judiciary Act, 28 U.S.C. § 1652, whereby "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision" not merely in "trials at common law" as theretofore, but "in civil actions in the courts of the United States, in cases where they apply," the Revisers' Note stating the change was made "to clarify the meaning of the Rules of Decision Act in the light of the Federal Rules of Civil Procedure. Such Act has been held to apply to suits in equity." See Mason v. United States, 1923, 260 U.S. 545, 558–559, 43 S.Ct. 200, 67 L.Ed. 396.

**2.** This is not inconsistent with the position, 2 Moore, Federal Practice, 753, that "the procedural union of law and equity does not preclude the utilization of whatever doctrine, legal or equitable, is applicable in the state court to determine whether the action is barred, provided the matter is substantive." Professor Moore is saying that in cases where adoption of state rules is called for it may still be necessary to analyze whether the federal action is at law or in equity in order to select the proper state rule. Here the issue is whether, with federal law and equity united, there is any basis for the federal court's applying in an action "at law" a state rule, applicable there both at law and in equity, which the federal court would not apply in an action equitable in nature.

No distortion of language is required to read § 1652 as meaning that state rules refusing to suspend the running of a period of limitations because of concealment need not be followed in any action to enforce a federally created right, whether on the ground that the Act of Congress establishing the right impliedly "otherwise require(s) or provide(s)," exactly as when Congress has established its own period of limitation, or on the ground that state rules do not "apply" in actions to enforce federally created rights as against an established contrary federal decisional rule. On the other hand, to go beyond this and dichotomize actions to enforce federally created rights which do not carry their own period of limitation as between those formerly "at law" and those "in equity," would demand not only major linguistic surgery but also disregard of the declared purpose of the 1948 amendment. See Note, Federal Statutes Without Limitations Provisions, 1953, 53 Colum.L. Rev. 68, 71–72, 73–74.[3]

## II.

We are therefore obliged to examine the question, not reached by the District Court under its view of the law, whether the complaint brings plaintiff within the federal concealment rule. Its principal allegations are as follows:

The Keller-Dorian process for producing color photographs was developed by French Keller-Dorian during the 1920's. Defendant Eastman Kodak Company, hereafter Kodak, was granted rights to exploit the process, certain of these being exclusive world-wide, others exclusive in the United States, Great Britain, Canada and Australia, and still others non-exclusive in these countries. Kodak also agreed to furnish French Keller-Dorian and its assigns and licensees with 35 millimeter film in countries where Kodak possessed such manufacturing rights, at a reasonable price. Thereafter Kodak began to use a different "Kodacolor" process and later the "Kodachrome" process. In 1929 French Keller-Dorian granted to plaintiff, a British corporation, the exclusive right to exploit its process worldwide subject to Kodak's rights and a few other preexisting arrangements; French Keller-Dorian also assigned to plaintiff Kodak's agreement to furnish film. In reliance on this, plaintiff entered into a contract to supply a company called Blattner with raw stock and apparatus produced under the process. Defendants, "separately or in concert, conspired to and effected" the organization of a Delaware corporation, hereafter American Keller-Dorian, and induced French Keller-Dorian to assign to American Keller-Dorian all its patent rights and its rights under the contract with Kodak. This was done in order to deprive plaintiff of the benefits of plaintiff's contracts with French Keller-Dorian and Blattner and to obtain control of the process with the intention of suppressing it. Then defendants, "separately or in concert," fomented disputes between plaintiff and French Keller-Dorian, and defendant Technicolor sued plaintiff with respect to the Blattner license. As a result, plaintiff was "wrongfully required and caused" to enter into an agreement, dated May 23, 1930, with French Keller-Dorian "providing for the cancellation of the license of January 31, 1929 to the Keller-Dorian processes and further providing for the acquisition of control of plaintiff by defendants * * *" This agreement "was also caused by defendants to provide" for an arbitration between plaintiff and French Keller-Dorian respecting the validity of the cancellation. As to this, plaintiff was

---

3. To such extent as the alternative ground for decision in Andreae v. Redfield, 1879, 98 U.S. 225, 235–238, 25 L.Ed. 158, would indicate a result contrary to that here reached, we regard it as inconsistent with the quoted language in Holmberg v. Armbrecht, supra. The Andreae case was not cited by any of the three courts that considered Holmberg v. Armbrecht, nor was it mentioned in the briefs in the Supreme Court.

Our holding also runs counter to a dictum, although not to the decision, in McCluny v. Silliman, 1830, 3 Pet. 270, 277, 7 L.Ed. 676.

"wrongfully induced" to waive the rights conferred by the 1929 agreement to arbitrate in England and instead to submit the validity of the cancellation to arbitration in France and under French law. The complaint does not say what the French arbitration determined, save as we may infer this from the foregoing and an allegation that the effect of all this was to deprive plaintiff of its rights in the Keller-Dorian process "by the domination and control over plaintiff wrongfully obtained by defendants." Then American Keller-Dorian granted to Paramount Publix Corporation exclusive rights to the process, saving Kodak's rights; simultaneously Paramount assigned its rights to Kodak, and the two companies agreed to work together in exploiting the process, Kodak to make the film and Paramount to take pictures and and print them. Finally defendants "separately or in concert * * * wrongfully caused and induced" plaintiff to sign a contract, dated October 22, 1931, agreeing to the cancellation of its license and assigning all its rights to American Keller-Dorian. In 1939 plaintiff was forced to dissolve because of insolvency. Meanwhile defendants worked together to exploit other color processes and to suppress the Keller-Dorian process. In 1948 American Keller-Dorian sued defendants in the Southern District of New York, Kodak being charged with breach of contract and all three defendants with antitrust violations and conspiracy; these actions were settled by a large cash payment from Kodak and a license whereby American Keller-Dorian would receive certain royalties. In 1955 plaintiff's capacity was restored by judicial decree under the Companies Act and a liquidator appointed.

The gist of the complaint thus is that plaintiff had valuable rights to exploit a process for color photography; that defendants conspired to deprive plaintiff of these rights, to acquire control of the process, and to suppress it; and that, to accomplish these ends, defendants forced plaintiff to sign away its rights, at first preliminarily and subject to a French ar-

bitration in 1930, and finally in 1931, with the result that plaintiff became insolvent and was dissolved in 1939.

Although the complaint liberally uses the adverb "fraudulently" as to defendants' conduct, such allegations are not enough to make out a case of concealment. The complaint is inconsistent with any view either that plaintiff did not know of its injury in signing away its rights to the Keller-Dorian process, see Developments in the Law—Statutes of Limitations, 1950, 63 Harv.L.Rev. 1177, 1221, or that it did not know of the actions of the defendants and of French and American Keller-Dorian that led up to that. The case is thus quite unlike those in which a defendant has concealed the transaction sued upon, Bailey v. Glover, supra; Rosenthal v. Walker, 1884, 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395, or the facts rendering a known transaction actionable, Traer v. Clews, 1885, 115 U.S. 528, 6 S.Ct. 155, 29 L.Ed. 467; Exploration Co. v. United States, 1918, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200; United States v. Diamond Coal & Coke Co., 1921, 255 U.S. 323, 41 S.Ct. 335, 65 L.Ed. 660, or his own identity, Holmberg v. Armbrecht, supra. Mere ignorance of evidence on which to establish a claim is not enough, even if the complaint here could be read as alleging that. Tinkoff v. United States, 7 Cir., 1954, 211 F.2d 890; Dawson, Fraudulent Concealment and Statutes of Limitation, 1933, 31 Mich.L.Rev. 875, 916. Even if no affirmative act of concealment is required in restraint of trade conspiracy cases, see Dawson, supra, at 880, 907–08; American Tobacco Co. v. People's Tobacco Co., supra; cf. 63 Harv. L.Rev. at 1221, in contrast to the usual rule where there is no fiduciary relationship, a point we do not decide, there is no allegation that plaintiff did not know in the late 1920's and early 1930's whatever the facts were as to joint action by defendants. Viewed with the benevolence proper on a motion under F.R.Civ. Proc. 12(c), the complaint does not make out, indeed it rather negatives, concealment, Suckow Borax Mines Consolidated,

Inc. v. Borax Consolidated, Ltd., supra; we do not read Crummer Co. v. DuPont, supra, as pointing to a contrary result.

A further word is needed as to one allegation, namely, that the May 23, 1930 agreement provided "for the acquisition of control of plaintiff by defendants through French Keller-Dorian and/or American Keller-Dorian, and others" and that plaintiff's injury "resulted from and was caused by the domination and control over plaintiff wrongfully obtained by defendants." If the complaint adequately alleged that defendants had acquired management control of plaintiff in May, 1930, so that plaintiff thereafter was acting in defendants' interest rather than for all its stockholders, the case would come within another exception suspending the statute during the period of such adverse domination—an exception which, though sometimes bulked with concealment, in fact rests on grounds akin to undue influence or duress. Allen v. Leflore County, 1900, 78 Miss. 671, 29 So. 161; Aldrich v. Steen, 1904, 71 Neb. 33, 98 N. W. 445, 100 N.W. 311; Alexander v. Thompson, 6 Cir., 1912, 195 F. 31. See Dawson, Undiscovered Fraud and Statutes of Limitation, 1933, 31 Mich.L.Rev. 591, 615–16; 63 Harv.L.Rev. at 1219; Annotation 1939, 121 A.L.R. 1294. However, the complaint falls far short of this; there is no allegation that in fact "control" was ever acquired—unless this means simply a mere enfeebling of plaintiff by the very acts alleged to constitute the wrong, cf. Martina Theatre Corp. v. Schine Chain Theatres, Inc., 2 Cir., 1960, 278 F.2d 798, 802—or that "control" of any sort lasted beyond the 1931 assignment, still eight years before plaintiff was dissolved.

 Plaintiff urges that if we regard the complaint as insufficient to bring its case within Bailey v. Glover, we should state that affirmance is without prejudice to the District Court's entertaining an application to amend. We have power to do that even at this late stage. See 3 Moore, Federal Practice (2d ed.) § 15.11, and we are cognizant of the mandate of F.R.Civ.Proc. 15(a) that leave to amend "shall be freely given when justice so requires," although surely the freedom must diminish as the litigation progresses. The test laid down by Rule 15(a) has not been met here. Plaintiff must have realized from the outset that a complaint alleging a claim based on transactions nearly thirty years past would be confronted with a motion raising the statute of limitations; we have no doubt that plaintiff's experienced counsel drew the best complaint to meet such a motion that the facts warranted. Yet the complaint not only does not allege concealment but substantially negates it; and although the insufficiency of the complaint in this respect was sharply raised in Technicolor's brief, plaintiff has given no indication what amendment could be made. The case thus differs *toto caelo* from Glus v. Brooklyn Eastern District Terminal, 1959, 359 U.S. 231, 235, see 232, footnote 2, 79 S.Ct. 760, 3 L.Ed.2d 770, which plaintiff cites. Where the transactions in suit are as remote as here and "it is above the remembrance of any living man truly to try and know the perfect certainty of such things," 1540, 32 Henry VIII, c. 2, the policy of the statute of limitations has peculiar force. Even under modern liberal rules of pleading "justice" still requires that a plaintiff seeking to escape the statute in such a case shall make "distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made." Stearns v. Page, 1849, 7 How. 819, 829, 12 L.Ed. 928. That has not been done, we are not told how it could be, the plaintiff's own allegations strongly suggest it could not, and defendants' interests are entitled to recognition as well as plaintiff's. Voliva v. Bennett, 5 Cir., 1953, 201 F.2d 434.

Affirmed.