**E. W. PUTTKAMMER and Helen M. Puttkammer, Plaintiffs,**

**v.**

**STIFEL, NICHOLAUS & COMPANY, INCORPORATED, a corporation, et al., Defendants.**

**No. 73 C 1710.**

United States District Court,
N. D. Illinois, E. D.

Oct. 19, 1973.

**496**

Roan & Grossman, Chicago, Ill., and Bechhoefer, Snapp, Sharlitt, Trippe Hausman & Krucoff, Washington, D. C., for plaintiffs.

O'Toole, Westrick & Harrison, Chicago, Ill., for NL Industries, Inc.

Mayer, Brown & Platt, Chicago, Ill., for Keefe-Bruyette and Woods Inc.

Chapman & Cutler, Chicago, Ill., for Stifel, Nicolaus and Co. and Ruth R. Mott and Charles Stewart Harding Mott.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Motion to Dismiss

The plaintiffs' complaint is brought under the Securities Exchange Act of 1934, and in particular, Rule 10b–5 promulgated thereunder. The issue primarily under consideration on defendants' motion to dismiss concerns the pleading of fraudulent concealment of the alleged action as such pertains to the tolling of the period of limitations. Only the skeleton facts need be given to discuss the issue. For purposes of this opinion, all facts well-pled are presumed true. Moore, Federal Practice, Second Edition, Vol. 2A, pp. 2266–2267.

Ruth Mott and Charles Stewart Harding Mott, as special administrators of the Defendant Estate of Charles Stewart Mott, held approximately 52% (197,750 shares) of the outstanding stock of Lake View Trust and Savings Bank at the time pertinent to the complaint. Lorraine Hayes and her nephew William Morgan (hereinafter "Hayes-Morgan") held approximately 25.6% (95,800 shares) of the outstanding stock at the time pertinent to the complaint. In autumn of 1968 it became essential for Mott and Hayes-Morgan to sell their Lake View stock; Mott was required to act because a divestiture of the Mott interest in Lake View was dictated by law, and Hayes-Morgan were required to act because divestiture of their interest was necessary to satisfy federal estate tax obligations. Since Lake View stock was closely held, Mott and Hayes-Morgan had a mutual benefit in procuring a buyer, so as not to have to sell their shares at a substantial discount. While NL Industries, Inc., expressed interest in obtaining Lake View shares, NL was not willing to purchase any shares unless it could purchase at least 80% of the outstanding common stock. Therefore, the Puttkammers contend, defendants Mott and NL, together with conspirators Hayes-Morgan, defendant Stifel, Nicolaus & Co., Inc., and defendant Keefe-Bruyette and Woods, Inc.—the latter two defendants being securities broker-dealers—conspired and devised to defraud plaintiffs by misleading them into selling their 25,509 shares (approximately 7% of the outstanding stock) at a price of $100 per share, and that the fair market value of said shares was at that time at least $150 per share. (Joseph D. Murphy, deceased, and formerly a principal in the firm of defendant Stifel, Nicolaus; and E. C. Burmeister, the President of Lake View, are also charged as conspirators, but are not named as defendants.) On or about January 15, 1969, plaintiffs consummated sale of their shares and received two checks totaling $2,562,635.01. Jurisdiction of Counts I through V is based upon 15 U.S.C. § 78aa, and Count VI is based upon principles of pendent jurisdiction.

Defendants move to dismiss the claim because suit was filed 4½ years after the sale of the stock, hence suit is barred by the 3 year period of limitations. Plaintiffs counter-argue that their action does not accrue until its discovery. Defendants reply that this is so

only upon allegation and proof that active concealment occurred.

### The Period of Limitations

■ There seems to be no dispute as to the applicable period of limitations to be used in this suit. Since there is no limitation of action provision in the Securities Exchange Act of 1934, the limitations period which governs plaintiffs' claims is the appropriate Illinois period. Parrent v. Midwest Rug Mills, Inc., 455 F.2d 123, 125 (7th Cir. 1972); Vanderboom v. Sexton, 422 F.2d 1233, 1236–1237 (8th Cir. 1970), cert. denied, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). The federal court must apply the Illinois period of limitations which most closely resembles and effectuates the purpose of the federal statute. *Parrent, supra,* 455 F.2d at 125; *Vanderboom, supra,* 422 F.2d at 1237. In Illinois, the state statute most closely resembling Rule 10b–5 is found in Ill.Rev. Stats., Ch. 121½, § 137.12, which has a period of limitations of three years. Ill.Rev.Stats., Ch. 121½, § 137.13D.

### The Tolling of the Statute

Plaintiffs have alleged the following in ¶ 18(c) of their complaint:

Plaintiffs further allege that they neither knew nor had reason to know of the above misrepresentations and concealments of material facts until the Fall of 1972, when, following the declaration of the extraordinary cash dividends by Lake View caused by Defendant NL, Plaintiffs requested counsel to investigate the circumstances surrounding the sale of their shares.

One must note with care in reading case precedent on fraudulent concealment the distinctions between what is necessary for plaintiffs ultimately to prove, and what is sufficient for plaintiffs to plead to withstand a motion to dismiss.

The doctrine of fraudulent concealment was explicitly recognized in Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L. Ed. 636 (1874), and given universal application in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

In *Bailey,* an assignee in bankruptcy brought an action to avoid a fraudulent conveyance. The applicable statute of limitations apparently barred the action. However, the Court, applying the doctrine of fraudulent concealment, reasoned that "to hold that by concealing a fraud . . . . in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure." 88 U.S. at 349. Additionally, the Court said that where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, *though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.*" (emphasis supplied) 88 U.S. at 348. One element of the *Bailey* doctrine, then, is that if the defendants' activities are of such a nature that they conceal themselves, then even though the defendants may have taken no steps to conceal them, there will be a tolling of the statute of limitations.

■ Federal law has long been established that where a federally created cause of action has been fraudulently concealed, or where the cause of action is itself to recover for fraud, the period of limitations does not begin to run until discovery. The rule depends, however, upon a clear allegation of fraudulent concealment or fraud. Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2d Cir. 1961). It is quite clear that simply because a plaintiff was not aware of his cause of action or of facts forming the basis for that cause of action, there has not necessarily been conduct concealing that cause of action. *Id.* However, the court reads plaintiffs'

complaint as alleging that the fraudulent concealment was merely part of that conspiratorial scheme which originally deceived them, and certainly that scheme has been put forth with great particularity. This is quite unlike *Moviecolor Ltd., supra.* That case distinguishes itself from the *Bailey* line of cases, stating that therein "The complaint is inconsistent with any view either that plaintiff did not know of its injury in signing away its rights . . ., or that it did not know of the actions of the defendants . . . that led up to that. The case is thus quite unlike those in which a defendant has concealed the transaction sued upon, Bailey v. Glover, *supra*; . . ." 288 F.2d at 87. Plaintiffs continue to have the burden of showing that defendants were indeed engaged in acts of fraudulent concealment—that the original conspiracy continued past the date of the culmination of the securities transaction—as well as the burden of showing that lack of diligence was not a factor in failure to discover their cause of action. However, for purposes of withstanding a motion to dismiss, plaintiffs' pleadings are sufficient in their allegations.

Though defendants masterfully argue otherwise, none of the authorities cited in their argument actually compel dismissal of this action. In Dyer v. Eastern Trust and Banking, 336 F.Supp. 890 (D.Me.1971), plaintiff's claims under the federal securities laws were dismissed on defendants' motion based on the statute of limitations. In analyzing plaintiff's complaint, the court stated:

The Complaint falls far short of alleging fraud or fraudulent concealment with the particularity required to bring plaintiff within the federal tolling rule. . . It is now alleged that defendants "knew . . . or should have known in the exercise of reasonable care" that the 1968 Reorganization was not exempt from the registration requirements of the Securities Act or that there was, at the very least, grave doubt as to the exemption. Such allegations are plainly not enough to charge the knowing and intentional misrepresentation necessary to make out a case of fraudulent concealment sufficient to toll the statute of limitations. [336 F.Supp. at 902.]

Clearly that holding is correct—a charge of negligence will not suffice to allege the intentional tort of fraud. But paragraph 18(c) of plaintiffs' complaint uses that language for the purpose of denying their own negligence or lack of diligence in discovering their cause of action, and not to charge fraud. For *Dyer* to be applicable in this regard, paragraph 18(c) would have to read, "Plaintiffs further allege that *defendants* neither knew nor had reason to know of the above misrepresentations and concealments of material facts until the Fall of 1972, etc."

In Morgan v. Koch, 419 F.2d 993 (7th Cir. 1969), the Court of Appeals for the Seventh Circuit was confronted with the defense of the statute of limitations to an action brought under the Securities Exchange Act of 1934 and Rule 10b–5. The plaintiff contended that the doctrine of fraudulent concealment of the cause of action operated to toll the statute from running. The court stated that "while the fraud in a particular case may be sufficient to give to the complaining party a right of action, still it may not, in the same case, be also sufficient to serve to conceal the cause of action within the contemplation of the law." 419 F.2d at 999. While such may be true in this case too, such a statement is a fact determination which can only be made after discovery or trial— as indeed was the situation in *Morgan* —and does not speak to the sufficiency of the pleadings.

The plaintiffs' complaint must be given liberal construction, and it is clear that those acts which comprise the securities fraud are intended to be construed as the affirmative acts which further concealed the original deception. But to reiterate, proof of those acts which misled the Puttkammers into selling their stock will *not necessarily* suffice to

prove fraudulent concealment; however, the allegations will suffice for both purposes to withstand defendants' motion to dismiss.

### The Pendent Jurisdiction Claim

■ Count VI of the complaint is brought under a theory of violation of fiduciary duties, and does not independently allege federal jurisdiction. The decision just reached above makes discussion of this point unnecessary, for it is clear that if the court has jurisdiction over Counts I through V, then it has jurisdiction over Count VI. For the sake of completeness, however, the court notes that if it does not retain jurisdiction over Counts I through V, then it should not retain jurisdiction over Count VI. *See,* United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The defendants' motion to dismiss is denied. However, the Court does suggest that following discovery, if it appears there remains no factual dispute on material facts, a motion by defendants for summary judgment may be indicated.